Pedro DEVIA, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–85–224 CR.

Court of Appeals of Texas,
Beaumont.

Sept. 30, 1986.

Darryl G. Campbell, Houston, for appellant.

Peter Speers, III, Dist. Atty., Conroe, for appellee.

## OPINION

BROOKSHIRE, Justice.

The Appellant was convicted in a jury proceeding of the offense of aggravated possession of marihuana after a plea of not guilty. The jury assessed punishment at 35 years in the Texas Department of Corrections and a fine of $50,000.00.

On a Wednesday in mid-October of 1984, at about 2:30 p.m., a Montgomery County deputy, who was attached to an Organized Crime Unit, received a telephone call from a person identifying himself as a United

States Drug Enforcement Officer in Houston. Deputy Jerry Bender headed the narcotics investigations in Montgomery County. The Sheriff's deputies stopped a 1978 Dodge flatbed pickup truck occupied by the Appellant and one Timothy Ormsby. They seized approximately 164 pounds of marihuana. The truck was stopped and searched and the marihuana taken because of information relayed to Bender by a federal drug enforcement official who was a supervisor of a 12–agent task force operating in the Houston area. The federal agent was Douglas D. Chandler.

Chandler testified that he learned from an undercover agent on his task force that a large load of marihuana had been delivered on October 1, 1984, to Cleveland, Texas. A sample of the substance had been actually tested. The substance was identified as marihuana. This same load of marihuana was transported, stored, and concealed in a warehouse in South Houston. The federal agent set up a continuing surveillance. Then, on October 17, 1984, Chandler received communications, both by radio and telephone, from his undercover agents that ten boxes of marihuana were being loaded onto a Dodge flatbed pickup truck, the color and license number of which were ascertained and later told to Bender. Chandler asked Bender not to mention the Drug Enforcement Agency's involvement since a major investigation and surveillance were ongoing. But, Chandler did not want the marihuana to be distributed to dealers and ultimate users.

Apparently, the marihuana was to be taken to North Texas, probably the Dallas area, but it was to go through Montgomery County. The maroon-colored Dodge flatbed pickup truck was described in accurate detail to Bender, including the exact license plate number. The truck had large wheels and a roll bar with yellow spotlights. Bender informed his deputies and instructed them to stop the vehicle for a traffic violation. No traffic violation took place; the truck was nevertheless stopped. A detective said that as he approached the truck, he did detect a strong smell of marihuana. The boxes were found and searched. They contained marihuana. A detective, Don Frisch, testified that he searched the cab of the truck and seized a marihuana cigarette butt. Also, he discovered several other items in the cab of the Dodge truck, such as a .25 caliber semiautomatic pistol, receipts from a Ramada Inn Hotel, a blank social security card, a blank voter registration card, a blank birth certificate, Appellant's passport, and Appellant's airline ticket.

Sergeant Bender testified that he simply did not have enough time to obtain a search warrant. Bender received his information at approximately 2:30 P.M. He observed the truck in Montgomery County at about 3:30 P.M. He testified that it would have taken two hours at a minimum to obtain a search warrant.

Several DEA officers singled out Idianel Martinez and Anthony Romano to be considered as the main targets and actors of their continuing surveillance. There was testimony that the marihuana in question was delivered to the Appellant by Martinez and Romano at the Harris County warehouse location.

■ Appellant argues that the warrantless search was not justified because the officers did not have probable cause. We disagree. Here, Bender and the deputies, we conclude, had probable cause and; further, the existence of the exigent circumstances made impracticable, and probably impossible, the timely procuring of a search warrant. *Hooper v. State,* 516 S.W.2d 941 (Tex.Crim.App.1974). We decide that the issue of probable cause is to be determined on the basis of the *collective* information known to the federal investigating drug enforcement officers as well as the arresting deputy sheriffs. *Woodward v. State,* 668 S.W.2d 337 (Tex.Crim. App.1982) (rehearing en banc 1984); *Wood v. Crouse,* 436 F.2d 1077 (10th Cir.), *cert. denied sub. nom. Wood v. Gaffney,* 402 U.S. 1010, 91 S.Ct. 2193, 29 L.Ed.2d 432 (1971). We decide that the exigent circumstances here set aside the requirement of obtaining a search warrant. The truck was

traveling expeditiously through Montgomery County on an interstate highway. It was headed toward Dallas County. The truck was highly movable. Appellant had within his possession a passport and airline ticket with other spurious, blank documents. We overrule Appellant's ground of error number one.

■ Next, the Appellant argues that the trial court committed error in refusing the Appellant the right to call witnesses, who indicated that they would simply assert their personal privilege against self-incrimination and give no meaningful or probative evidence. The record tends to show that these two witnesses, Idianel Martinez and Anthony Romano, were the principal protagonists involved in the ongoing investigation by the Federal Drug Enforcement Agency. It should be remembered that the approximate 164 pounds of marihuana on the Dodge truck was not all of the marihuana that was transported from the airplane drop at Cleveland, Texas, to the warehouse in South Houston. It was only a minor portion. This is clearly shown in the record.

A defendant in a criminal case does not have the right to call one or more witnesses into the witness box to force that witness to claim his or her privilege against self-incrimination before the jury. *Horner v. State*, 508 S.W.2d 371 (Tex.Crim.App. 1974); *Chambliss v. State*, 633 S.W.2d 678 (Tex.App.—El Paso 1982), *affirmed on other grounds*, 647 S.W.2d 257 (Tex.Crim.App. 1983). The refusal of such witness to testify on the grounds of self-incrimination cannot be made the basis of any reasonable inference by the jury, either favorable to the prosecution or favorable to the defense. *Glasper v. State*, 486 S.W.2d 350 (Tex. Crim.App.1972).

■ The final ground of error urged by the Appellant is that the trial court erred in allowing the State to call one Paul Darby as a rebuttal witness. Of course, the correct method for discovering the witnesses to be proffered by the State is by a motion for discovery filed by the accused to discover all of the witnesses that the State will call. Of course, the motion for discovery of witnesses must be properly and timely presented to the court and a ruling obtained. We do not find such a motion for discovery nor an order thereon in our record. We deem Appellant waived this point.

■ There is another reason for disagreeing with the Appellant concerning this rebuttal witness. The State cannot anticipate exactly what rebuttal witnesses will become necessary until the defense rests. If the State calls a rebuttal witness, then it becomes the defense's burden to show bad faith on the part of the prosecution in calling the witness as a rebuttal witness or in failing to disclose the name of the rebuttal witness. The Appellant has not shown, under this record, bad faith on the part of the prosecution. It was not error for the trial judge to allow this rebuttal witness to testify. *Lincoln v. State*, 508 S.W.2d 635 (Tex.Crim.App.1974).

We overrule the Appellant's three grounds of error and affirm the judgment and sentence below.

Affirm.

BURGESS, Justice, concurring.

I wholeheartedly concur in the result and the rationale. I only point out that the facts are glaringly different than those in *Roldan v. State*, 698 S.W.2d 741 (Tex.App. —Beaumont 1985, pet. pending). In the instant case, the undercover agent actually saw the contraband being loaded onto the truck and the identity of the undercover agent was known to the DEA officer. In *Roldan*, "the informant had not actually seen the cocaine or the secret welded compartment" and "the reliability and credibility of the unidentified subinformant was unknown". Therefore, my concurrence in this instance does not diminish my former dissent in *Roldan*.