# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-02-00520-CR

---

**Guadalupe Garza Ortiz, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT
NO. 01-1021-K368, HONORABLE BURT CARNES, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Guadalupe Garza Ortiz appeals his conviction for intentionally and knowingly causing serious bodily injury to a child. Tex. Pen. Code Ann. § 22.04 (West 2003). The jury found appellant guilty and assessed his punishment at ninety-nine years' imprisonment. The jury also found that a deadly weapon had been used as alleged in the indictment.

### Points of Error

Appellant advances five points of error. First, appellant urges that the trial court erred in excluding evidence "relevant to appellant's defense." Second, appellant contends that the trial court erred in refusing to grant a mistrial after the admission of an extraneous offense during the guilt/innocence stage of the trial. Third, appellant complains that the trial court violated section two of article 37.07 of the Texas Code of Criminal Procedure by submitting a charge allowing the jury

at the guilt/innocence stage of the trial to consider the effect of their verdict on the issue of punishment. Fourth and fifth, appellant asserts that he was denied the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 10 of the Texas Constitution.

## Background and Facts

Appellant does not challenge either the legal or factual sufficiency of the evidence to sustain his conviction. A recitation of the pertinent facts will, however, place the points of error in proper perspective.

Appellant Ortiz and Lori Carbajal had an on-and-off relationship. They never married. On June 5, 2001, appellant took Lori to the hospital to await the birth of their son, Daniel Carbajal. Appellant was not present at the birth because he left the hospital, began consuming alcohol and cocaine, and never returned.

On October 1, 2001, they were living at the trailer home of appellant's parents near Jarrell. That morning, Lori announced that she did not have a babysitter for Daniel and would not go to work. Appellant insisted that she go to work in Austin. He stated that he would take care of the almost four-months-old Daniel. He asked Lori to call his new place of employment and report that he was sick. Appellant was "stressed out" because of his parental responsibilities, his relationship with Lori, and his unstable employment situation. Appellant had begun a self-rehabilitation program in attempting to withdraw from the use of heroin.

Late in the afternoon, Lori arrived home from work and found appellant and Daniel in bed. Appellant told her that Daniel was not feeling well as he had fallen when appellant was

2

changing his diaper.  Lori observed that Daniel appeared to be having a seizure.  Lori took Daniel

and ran to the car.  Appellant proceeded to drive to a hospital, but along the way the car struck the

curb of the highway and a flat or blow-out of a tire disabled the vehicle.  A man named Lopez gave

them a ride in his vehicle until they encountered Deputy Sheriff Jack Tomlinson directing traffic at

a Georgetown construction site.  Tomlinson, in view of Daniel's condition, called for EMS and

Starflight.  Starflight transported the child to the Scott and White Hospital in Temple.

At the hospital, Daniel was placed on a ventilator to assist his breathing.  There were

bruises on his face, neck, arms, thighs, and buttocks.  He had experienced subdural and retinal

hemorrhaging.  Daniel's brain was swollen and the brain gave indications that it had been deprived

of oxygen.  Daniel continued to experience seizures because of the brain injuries.  The medical

personnel did not expect Daniel to live.  The current prognosis is that Daniel will have "severe

neurological impairment" the rest of his life.  He lost a significant amount of brain tissue as a result

of his injuries.  It is unlikely, according to medical experts, that he will ever be able to see or walk

and will always be mentally retarded.

After appellant's arrival at the hospital, he gave a written statement to Deputy Sheriff

J.R. Hicks that Daniel had been with Catherine, a baby sitter, that day and when Lori brought Daniel

home he was weak and limp.  In the early morning hours of the next day, October 2, appellant gave

a second written statement in which he admitted that he lied in his first statement because Lori did

not want her family to know that they were living together.  Appellant admitted that he had been the

baby sitter; that while he was changing the child's diapers at noon-time he reached for the baby

powder and the child's body swayed and fell out of his hands onto a child's car seat; and that the

child's bottom hit first and his head struck the car seat. It was afternoon before appellant observed the child appeared weak and limp.

The investigation continued. On October 4, 2001, officers armed with a search and an arrest warrant went to the home of appellant's parents where appellant lived. There, they obtained a third written statement and a tape recorded statement from appellant. In these statements, appellant admitted that Daniel was crying and that he (appellant) had been under a lot of stress, so he spanked Daniel several times. At one point, Daniel, during a spanking, fell out of appellant's hands and hit the dresser and bounced off the floor. Appellant put Daniel to bed. After appellant woke up from a nap, Daniel was crying again. Appellant picked up the child and shook him and threw him onto a bed. Appellant noticed that the child's eyes rolled back into his head. The child emitted a low moan and his body went limp. All of appellant's statements were admitted into evidence. All three medical experts who treated Daniel testified that his injuries were consistent with "shaken baby syndrome" and the brain injuries were severe and would be prolonged.

Appellant, testifying in his own behalf, repudiated all of his previous statements. He stated that the statements were given to protect Lori knowing that he could endure jail time better than she could. Appellant then gave a different version of what occurred on October 1, 2001. Appellant told the jury that after Lori left for work he discovered severe bruises on Daniel's bottom. When Lori returned home from work, he confronted her about the bruises. Lori threatened to leave him. Appellant then announced that he would keep Daniel. A struggle ensued, with Lori physically trying to pull Daniel from appellant's arms. While both were pulling on Daniel, appellant let go, and Daniel's head hit the dresser.

4

Appellant acknowledged that at the time he had been trying to get off drugs for about a month; that on the day in question he was using a prescription drug, Flexeril, a muscle relaxant, that he had obtained from a friend, not a doctor. Appellant admitted that he had taken fifteen to twenty doses on October 1, 2001, at the rate of two or three an hour.

In rebuttal, the State called Kenneth Adair, once a cell mate of appellant's in the Williamson County jail. Adair related that appellant told him that he (appellant) was going to "make up" a story about the child falling during a struggle with Lori, who was pulling on the child; that he would say his earlier versions were given only to protect the mother of his child. Adair stated that appellant indicated that he wanted to implicate Lori because she had not contacted him since he had been incarcerated.

In rebuttal, appellant acknowledged that he had been in jail with Adair, had discussed his case with Adair, and at one point told Adair about his (appellant's) dilemma in "coming forward with the truth" and the struggle with Lori. He recalled that Adair responded, "Go ahead and fry the bitch."

**Exclusion of Evidence**

In his first point of error, appellant urges that the "trial court erred in refusing to admit evidence relevant to appellant's defense." In order to properly respond, we shall consider the contention in two parts. We do this because appellant contends that the trial court excluded relevant evidence pertaining to (1) reasons for giving false statements to the police and (2) a "meaningful defense." The evidence excluded is the same for both purposes.

5

Following a recess taken while appellant was on direct examination and in the jury's absence, appellant's counsel inquired of the trial court about offering evidence that Lori had a family violence assault arrest and that it had affected appellant's "judgment in the decision he made regarding the statements in the case." Counsel pointed out that it was "a critical issue about why he [appellant] would make these false statements about his own behavior," and that appellant would testify that he believed if he "took the fall, it would be better for all of us." The trial court responded that appellant "had already said that." Counsel, however, wanted to be more specific about appellant's reasons for making the statements. Upon this offer of proof, *see* Tex. R. Evid. 103(b), the trial court, after colloquy, ruled that the evidence, if relevant, had little probative value and was substantially outweighed by extremely prejudicial matters. *See* Tex. R. Evid. 403. The trial court nevertheless authorized the perfection later of an informal bill of exception.

As appellant's direct examination continued, he stated that he had given the first written statement to the police for Lori's sake so she "could save face with her family." Appellant related that he gave the second written statement to prevent the State from taking Daniel away and Lori going to jail. "I knew she wouldn't be able to handle it . . . so I figured I'd take all the blame and that I'd go to jail." Appellant further testified that the third written statement and tape recording was false because he was in shock and under duress; that his emotional father told him that Detective Hughley had said that appellant had to say something; and that he didn't want "to put Lori out there like that," as he could handle being locked up better than Lori.

At the conclusion of the direct examination, appellant's counsel was permitted to perfect the informal bill of exception. Appellant testified that "one time" Lori told him that she got

6

into a fight with her younger sister and had to take anger management classes. He took that into consideration in making the statements to the detectives. He considered that this "wouldn't look good for her," and that "it would be easier for me to take the heat." This testimony did not establish that appellant knew of Lori's arrest. In a rather strange procedural move, appellant called Lori on the bill of exception designed to show what appellant would testify if permitted. Her testimony was extremely disjointed. When asked if appellant was aware of the "incident," she responded: "Yes I was on the phone with him when it happened."

A trial court's decision to admit or exclude evidence is afforded a great deal of discretion. *Montgomery v. State*, 810 S.W.2d 372, 378-79 (Tex. Crim. App. 1990). Therefore, we review a trial court's ruling on the admission or exclusion of evidence under an abuse of discretion standard. *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001); *Angleton v. State*, 971 S.W.2d 65, 67 (Tex. Crim. App. 1998). If the trial court's ruling is reasonably supported by the record under any theory of applicable law, it will be upheld on appeal. This is known as the "zone of reasonable disagreement" test. *Montgomery*, 810 S.W.2d at 391; *see also* Tex. R. Evid. 103(a). Appellant's counsel offered the evidence at trial on the basis that it affected appellant's judgment in making the false statements. In his brief, appellant notes that in the bill of exception appellant testified the excluded evidence "influenced his state of mind in regard to his pre-trial statements." Before and after the evidence was excluded, appellant repeatedly testified before the jury as to his reasons for the fabrication in his earlier statements to the police. Appellant's personal knowledge that Lori had a fight with her sister and that anger management classes resulted does not appear to meet the relevancy test. Tex. R. Evid. 401. If relevant as presented, the trial court ruled that it did

7

not meet the balancing test under Rule 403. *See* Tex. R. Evid. 403. Appellant acknowledges the Rule 403 decision but has not challenged that ruling by briefing the issue. *See* Tex. R. App. P. 38.1(e), (h). We find no abuse of discretion on the part of the trial court.

## A Further Contention

On appeal, appellant also claims for the first time that the exclusion of the evidence violated his constitutional right to due process—being the right to present a meaningful defense. *See Chambers v. Mississippi*, 410 U.S. 284, 294-95 (1973). Appellant has not identified his "defense" as stated in his point of error. Recognized defenses are labeled as a "defense" or an "affirmative defense" in the penal code. *See* Tex. Pen. Code Ann. §§ 2.03, .04 (West 2003). The term "defense" should not be used for an issue where the defense has not been labeled as such by the Legislature. *Giesberg v. State*, 984 S.W.2d 245, 250 (Tex. Crim. App. 1998); *Roise v. State*, 7 S.W.3d 225, 242-43 (Tex. App.—Austin 1999, pet. ref'd).

> Traditional "common law" defenses . . . are no longer considered defenses per se. That is, if raised the jury is not instructed on the issue and the state bears no burden of producing evidence to rebut them. Courts have reasoned that such issues are in the nature of a negation of one of the elements of the state's case.

6 Michael B. Charlton, *Texas Practice: Texas Criminal Law* § 2.4 (2001) (citing *Giesberg*, 984 S.W.2d at 245).

Thus, issues such as accident, alibi, and mistaken identity constitute no more than a negation of an essential element of the State's burden of proof of the elements of the offense alleged and a defendant is not entitled to an instruction on such a defensive issue. *Giesberg*, 984 S.W.2d

8

at 246-47; *Williams v. State*, 630 S.W.2d 640, 644 (Tex. Crim. App. 1982); *Castaneda v. State*, 28 S.W.2d 216, 226 (Tex. App.—El Paso 2000, pet. ref'd); *Anderson v. State*, 11 S.W.3d 369, 373 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd).

Appellant has not revealed the "meaningful" defense that he was deprived of presenting by virtue of the excluded evidence. We will not speculate as to the claimed constitutional error. It is observed that appellant made no trial objection on the basis now advanced in order to preserve error. *See* Tex. R. App. P. 33.1(a). Even constitutional error may be waived. *See Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990); *Gibson v. State*, 516 S.W.2d 406, 409 (Tex. Crim. App. 1974); *Webber v. State*, 21 S.W.3d 726, 730 (Tex. App.—Austin 2000, pet. ref'd). The first point of error is overruled.

### Motion for Mistrial

In his second point of error, appellant contends that the trial court erred in denying appellant's motion for a mistrial "based on the improper admission of an unadjudicated extraneous offense during the guilt/innocence phase of trial."

After appellant testified and the defense rested, the prosecution called Kenneth Adair in rebuttal. Adair, for a period of time, had been a cell mate of appellant in the Williamson County jail. Adair testified about certain statements made to him by appellant. The record also reflects the following on direct examination:

Q. And did you [Adair] know what he had been charged with?

A. Not right at first. He didn't really say anything. But a couple of days after, he did.

9

Q. And what was that charge that you understood?

A. It was injury to a child and then a tampering with evidence charge also.

Appellant objected on the basis of an insertion of an extraneous offense into evidence. At the bench, the prosecution informed the trial court that the other offense was a completely different offense still pending, which occurred before the instant offense. The trial court sustained the objection and instructed the jury, at appellant's request, to disregard the witness's last response. Appellant's motion for a mistrial was overruled.

A trial court's denial of a mistrial motion is reviewed under an abuse of discretion standard. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). The determination of whether a given error necessitates a mistrial must be made by examining the particular facts of the case. *Id*. Ordinarily, a prompt instruction to disregard will cure the error associated with an improper question and answer, even one regarding an extraneous offense. *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000); *Fuller v. State*, 827 S.W.2d 919, 926 (Tex. Crim. App. 1992); *Fairly v. State*, 90 S.W.3d 903, 905 (Tex. App.—San Antonio 2002, no pet.); *Banks v. State*, 955 S.W.2d 116, 119 (Tex. App.—Fort Worth 1999, no pet.).

Prompt instructions to disregard have been held to cure an unresponsive answer. *Hughes v. State*, 878 S.W.2d 142, 154 (Tex. Crim. App. 1992). A reference to a prior prison incarceration, *Iennard v. State*, 802 S.W.2d 678, 685 (Tex. Crim. App. 1990), an improper impeachment, *Adams v. State*, 683 S.W.2d 661, 670 (Tex. Crim. App. 1985), and a reference to an outstanding arrest warrant for defendant for an extraneous offense, *Alaniz v. State*, 891 S.W. 737,

742-43 (Tex. App.—Houston [1st Dist.] 1994, no pet.) are all examples of improprieties cured by instructions to disregard. A reviewing court will presume that the jury will obey the trial court's instruction to disregard. *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987).

A mistrial is only required when the impropriety is clearly calculated to inflame the minds of the jurors and is of such a character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors. *Hinojosa v. State*, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999); *Huffman v. State*, 746 S.W.2d 212, 218 (Tex. Crim. App. 1988). These conditions are not present here.

The trial court sustained appellant's objection and promptly instructed the jury to disregard witness Adair's answer. The jurors knew the offense with which appellant was charged. Part of Adair's answer did not add to the jury's knowledge. The other part was unresponsive. The extraneous offense was not mentioned again. The reference was an isolated one. The trial court did not abuse its discretion in denying the mistrial motion. The second point of error is overruled.

**The Charge on Lesser-Included Offenses**

In his third point of error, appellant contends that the "trial court violated article 37.07 § 2 of the Texas Code of Criminal Procedure by submitting a charge to the jury that allowed the jury to consider the effect of their [sic] verdict in regard to the issue of punishment during the guilt/innocence phase of the trial."

Appellant was indicted for intentionally and knowingly causing serious bodily injury to a child. *See* Tex. Pen. Code Ann. § 22.04(a)(1), (e) (West 2003). The trial court charged the jury on the alleged offense and also submitted the lesser included offenses of recklessly engaging in

11

serious bodily injury to a child and by causing serious bodily injury to a child by criminal negligence.

*Id*. (a), (e), (g). Appellant contends that the submission of later offenses was appropriate, but the use

of the term "lesser included offense" in the court's jury charge was error.

Article 37.07, section 2(a) of the Texas Code of Criminal Procedure provides:

> Sec. 2. (a) In all criminal cases, other than misdemeanor cases of which the justice court or municipal court has jurisdiction, which are tried before a jury on a plea of not guilty, the judge shall, before argument begins, first submit to the jury the issue of guilt or innocence of the defendant of the offense or offenses charged, *without authorizing the jury to pass upon the punishment to be imposed*.

Tex. Code Crim. Proc. Ann. art. 37.07, § 2(a) (West Supp. 2004) (emphasis added).

Appellant objected to the court's charge on the basis of this statute. The objection

was overruled. The trial court pointed out that the phrase "lesser included offense" had been

removed from the jury verdict forms to be submitted and deleted from headings or labels in the

charge above the offenses involved. The phrase was not removed, however, from the body of the

application paragraphs in the charge relating to these offenses. The court's jury instructions were

favorable to appellant and did not authorize the jury to pass upon any punishment at the

guilt/innocence stage of the bifurcated trial. Moreover, the "lesser included offenses" and their range

of punishment was discussed during the voir dire examination of the jury panel without objection.

Article 36.14 provides in pertinent part that:

> Subject to the provisions of article 38.07 in each felony case and in each misdemeanor case tried in a court of record the judge shall, before the argument begins, deliver to the jury, except in pleas of guilty, where the jury has been waived, a written charge *distinctly setting forth the law applicable to the case* . . . .

12

Tex. Code Crim. Proc. Ann. art. 36.14 (West Supp. 2004) (emphasis added). Thus, in the instant case the trial court was required to apply the law to the facts.

Article 37.09 (Lesser Included Offense) provides:

An offense is a lesser included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

Tex. Code Crim. Proc. Ann. art. 37.09 (West 1981).

Section 6.02(a), (d), and (e) of the Texas Penal Code provides:

(a) Except as provided in subsection (b) a person does not commit an offense unless he intentionally, knowingly, recklessly, or with criminal negligence engages in conduct as the definition of the offense requires.

(d) Culpable mental states are classified according to relative degrees from highest to lowest as follows:

(1) intentional

(2) knowing

(3) reckless

13

　　　　　　(4)　criminal negligence

　　(e)　Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged.

Tex. Pen. Code Ann. § 6.02(a), (d), (e) (West 2003). *See also Patterson v. State*, 46 S.W.3d 294, 303-04 (Tex. App.—Fort Worth 2000) *aff'd* following remand, 101 S.W.2d 150, pet. ref'd).

　　　　The statutes expressly provide for lesser included offenses and different degrees of culpable mental states.  In submitting the charge to the jury, the trial court was required to apply the applicable law on the issues raised by the evidence.

　　　　The phrase "lesser included offense," being a part of the statutory law, is commonly used by the bench and bar in jury trials, utilized in jury instructions and in appellate court opinions, and discussed by legal commentators.  *See, e.g.*, 43A George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Law and Practice* § 43.499, 500 (2d ed. 2001).

　　　　Appellant's contention is without merit.  The third point of error is overruled.

**Ineffective Assistance of Counsel**

　　　　In his fourth and fifth points of error, appellant contends that he was denied his right to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 10 of the Texas Constitution.  Appellant urges that his trial counsel was ineffective because he failed to object to Kenneth Adair being called by the State as a rebuttal witness because Adair was not on a list of witnesses furnished to appellant.

14

## The Standard of Review

The Sixth Amendment to the United States Constitution guarantees the right to the reasonably effective assistance of counsel in a state criminal proceeding. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970); *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex. Crim. App. 1986). In *Strickland v. Washington*, 466 U.S. 668, 689 (1984), the United States Supreme Court held that in order to show ineffective assistance of counsel, a convicted defendant must show that (1) his trial counsel's performance was deficient, in that counsel made such serious errors he was not functioning effectively as counsel; and (2) the deficient performance prejudiced the defense to such a degree that the defendant was deprived of a fair trial. In this connection, a strong presumption exists that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. "Prejudice" is demonstrated when the convicted defendant shows "a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id*. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Parmer v. State*, 38 S.W.3d 661, 665 (Tex. App.—Austin 2000, pet. ref'd); *Banks v. State*, 819 S.W.2d 676, 681 (Tex. App.—San Antonio 1991, pet. ref'd). Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the results unreliable. *Strickland*, 466 U.S. at 687; *Oestrick v. State*, 939 S.W.2d 232, 237 (Tex. App.—Austin 1997, pet. ref'd). Under *Strickland*, a defendant has the burden to prove a claim of ineffective assistance of counsel by a preponderance of the evidence. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996); *Parmer*, 38 S.W.3d at 665.

15

The two-pronged standard for testing claims of ineffective assistance of counsel set out in *Strickland* has been adopted for Texas constitutional claims. *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). Under the *Strickland-Hernandez* standard, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Josey v. State*, 97 S.W.3d 687, 696 (Tex. App.—Texarkana 2003, no pet.). The assessment of whether a defendant received effective assistance of counsel must be made according to the facts of each case. *Lopez v. State*, 96 S.W.3d 406, 417 (Tex. App.—Austin 2002, pet. ref'd). Whether the *Strickland* test has been met is to be judged by the "totality of the representation" rather than by isolated acts or omissions of trial counsel, and the test is applied at the time of the trial, not through hindsight. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990); *Banks*, 819 S.W.2d at 681. Any judicial review of a defendant's claim of ineffective assistance must be highly deferential to trial counsel. *Thompson*, 9 S.W.3d at 813. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.*; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

A reviewing court will not second guess through hindsight the strategy of counsel at trial. *Blevins v. State*, 18 S.W.3d 266, 271 (Tex. App.—Austin 2000, no pet.). In the absence of direct evidence in the record of counsel's reasons for the challenged conduct, an appellate court will assume a strategic motivation, if any can be imagined. *Garcia*, 57 S.W.3d at 441; *Skeen v. State*, 96 S.W.3d 567, 580 (Tex. App.—Texarkana 2002, no pet.). *Cf. Moore v. Johnson*, 194 F.3d 586, 604 (5th Cir. 1999). The challenged conduct will not, under the circumstances, constitute deficient

16

performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *Garcia*, 57 S.W.3d at 441; *Thompson*, 9 S.W.3d at 814.

Claims of ineffective assistance of trial counsel can be properly raised on appeal if the appellate record is sufficiently developed. *Robinson v. State*, 16 S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000). In most cases, the trial record alone would be insufficient. *See Thompson*, 9 S.W.3d at 813. The claim can be developed by a hearing on a motion for new trial based on a claim of ineffective assistance of counsel. *See Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993).

Appellant's appellate counsel filed a motion for new trial based in part on a claim of ineffective assistance of trial counsel because of the failure to call material witnesses. The motion was overruled by operation of law. Thus, all we have to evaluate appellant's present claim is the appellate record itself.

As earlier noted, appellant took the witness stand, disavowed his earlier statements, and gave a different version of what occurred on October 1, 2001. Thereafter, Kenneth Adair, a former jail cell inmate of appellant's, was called as a rebuttal witness by the State. There was no objection to Adair's testimony, although his name was not on the list of the State's witnesses furnished to appellant. Upon a request by a defendant, the State must in accordance with the trial court's order give notice of whom it intends to call as witnesses at any stage of the trial. *See Stoker v. State*, 788 S.W.2d 1, 15 (Tex. Crim. App. 1989); *Hightower v. State*, 629 S.W.2d 920, 925 (Tex. Crim. App. 1981); *Young v. State*, 547 S.W.2d 23, 27 (Tex. Crim. App. 1977); *Osbourn v. State*, 59

S.W.3d 809, 812 (Tex. App.—Austin 2001), *aff'd*, 92 S.W.3d 531 (Tex. Crim. App. 2002); *Castaneda v. State*, 28 S.W.3d 216, 223 (Tex. App.—El Paso 2000, pet. ref'd).[1]

If a trial court allows an unlisted witness to testify over objection, the decision is reviewed for an abuse of discretion. *Stoker*, 788 S.W.2d at 15; *Martinez v. State*, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993); *Hardin v. State*, 20 S.W.3d 84, 88 (Tex. App.—Texarkana 2000, pet. ref'd). Among the factors to be considered by an appellate court are any showing by the defendant of bad faith on the part of the prosecution in failing to disclose and whether the defendant could have reasonably anticipated that the witness would testify, despite the absence of the witness's name from the State's list of witnesses. *Castaneda*, 28 S.W.3d at 223 (citing *Stoker*, 788 S.W.2d at 15). Unless the defendant makes the necessary showing, the trial court's decision to allow the testimony will not be disturbed on appeal. *Id.*

The question presented by appellant is not whether the trial court abused its discretion, but whether there was ineffective assistance by appellant's trial counsel in not objecting to Adair's testimony on rebuttal. This is the only error attributed to trial counsel. Although a single error may be sufficient to demonstrate ineffective assistance of counsel, *Ex parte Felton*, 815 S.W.2d 733, 736 (Tex. Crim. App. 1991), the "totality of the representation" is used to judge whether the *Strickland* two-prong test has been met. *Welborn*, 785 S.W.2d at 393. Isolated acts or omissions

---

[1] Despite the "at any stage of the trial" language found in the cases, there is other case law that the State is not required to disclose the identity of rebuttal witnesses setting forth the different reasons for such a rule. *See Elkins v. State*, 543 S.W.2d 648, 649 (Tex. Crim. App. 1976); *Hoagland v. State*, 494 S.W.2d 186, 189 (Tex. Crim. App. 1993); *Hardin v. State*, 20 S.W.3d 84, 89 (Tex. App.—Texarkana 2000, pet. ref'd); *Washington v. State*, 943 S.W.2d 501, 506 (Tex. App.—Fort Worth 1997, pet. ref'd) (op. on reh'g); *Devia v. State*, 718 S.W.2d 72, 74 (Tex. App.—Beaumont 1986, no pet.).

do not furnish the test. *Id*. And the "totality of the representation" test is applied at the time of trial, not through hindsight. *Banks*, 819 S.W.2d at 681.

We have earlier discussed the condition of the record regarding this claim. The instant case falls within the majority of cases where the record on direct appeal is inadequately developed to reflect the claimed failure of trial counsel under the *Strickland* test. *Thompson*, 9 S.W.3d at 813; *Blevins*, 8 S.W.3d at 272. We thus are unable to make a fair evaluation of appellant's claim. Appellant, however, is not foreclosed from presenting his claim via a collateral attack by virtue of an application for post-conviction writ of habeas corpus. *Robinson*, 16 S.W.3d at 812-13; *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998); *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997). Appellant's fourth and fifth points of error are overruled.

The judgment is affirmed.

_____

John F. Onion, Jr., Justice

Before Chief Justice Law, Justices Kidd and Onion[*]

Affirmed

Filed: March 11, 2004

Do Not Publish

_____

[*]  Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

19