ACCEPTED
03-14-00655-CR
5200327
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/7/2015 4:26:09 PM
JEFFREY D. KYLE
CLERK

**Case No. 03-14-00655-CR**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

5/7/2015 4:26:09 PM

JEFFREY D. KYLE
Clerk

IN THE COURT OF APPEALS
THIRD JUDICIAL DISTRICT
AUSTIN, TEXAS

# NATHANIEL J. FRAZIER, JR., Appellant

# VS.

# THE STATE OF TEXAS, Appellee

BRIEF FOR APPELLANT
IN ACCORDANCE WITH *ANDERS v. CALIFORNIA*

On Appeal from Cause Number D-13-0958-SA
in the 391ST District Court, Tom Green County, Texas

Prepared by:
Justin S. Mock
Ellis & Mock, PLLC
125 South Irving Street
San Angelo, Texas 76903
Telephone: (325) 486-9800
Facsimile: (325) 482-0565
Texas State Bar Number 24064155
Justin@ellisandmock.com
Court Appointed Attorney
for Appellant Nathaniel J. Frazier, Jr.

## Identity Of Parties And Counsel

In accordance with Rule 38.1(a), Texas Rules of Appellate Procedure, Counsel for Appellant certifies the following is a complete list of parties and counsel known to be legally interested in the resolution of the instant appeal.

Mr. Jason Ferguson
Office of Tom Green County District Attorney
124 West Beauregard Avenue
San Angelo, Texas 76903
Appellee

Mr. Nathaniel J. Frazier, Jr.
TDCJ No. 01942796
John B. Connally Unit
899 FM 632
Kenedy, TX 78119
Appellant

/s/ Justin S. Mock
Justin S. Mock, Attorney for Appellant

i

# TABLE OF CONTENTS

Identity Of Parties And Counsel ........................................................................... i

Table Of Contents .............................................................................................. ii

Index Of Authorities.......................................................................................... v

Statement Of The Case...................................................................................... vii

Issues Presented ................................................................................................ viii

Issue Number One: Sufficiency of the indictment.

Issue Number Two: Any adverse pretrial rulings affecting the course of the trial, including but not limited to rulings on motions to suppress, motions to quash, and motions for a speedy trial.

Issue Number Three: Any adverse rulings during trial on objections or motions, including but not limited to objections to admission or exclusion of evidence, objections premised on prosecutorial or judicial misconduct, and motions for mistrial.

Issue Number Four: Any adverse rulings on post-trial motions, including motions for a new trial.

Issue Number Five: Jury selection.

Issue Number Six: Jury Instruction.

Issue Number Seven: Sufficiency of the evidence, including a recitation of the elements of the offense and facts and evidence adduced at trial relevant to the offense upon which conviction is based.

Issue Number Eight: Any failure on the part of appellant's trial counsel to object to fundamental error.

Issue Number Nine: Any adverse rulings during the punishment phase on objections or motions.

Issue Number Ten: Whether the sentence imposed was within the applicable range of punishment?

Issue Number Eleven: Whether the written judgment accurately reflects the sentence that was imposed and whether any credit was properly applied?

Issue Number Twelve: Examination of the record to determine if the appellant was denied effective assistance of counsel.

Statement Of The Facts ................................................................................................ 1

Summary Of The Argument Of Issue Number One. ................................................... 3

Argument Of Issue Number One ................................................................................ 3

Summary Of The Argument Of Issue Number Two ................................................... 5

Argument Of Issue Number Two ................................................................................ 5

Summary Of The Argument Of Issue Number Three ............................................... 12

Argument Of Issue Number Three ........................................................................... 12

Summary Of The Argument Of Issue Number Four. ............................................... 17

Argument Of Issue Number Four. ............................................................................ 17

Summary Of The Argument Of Issue Number Five ................................................. 17

Argument Of Issue Number Five .............................................................................. 18

Summary Of The Argument Of Issue Number Six ................................................... 18

Argument Of Issue Number Six ............................................................................... 18

Summary Of The Argument Of Issue Number Seven..........................................................20

Argument Of Issue Number Seven ...................................................................................20

Summary Of The Argument Of Issue Number Eight. ......................................................36

Argument Of Issue Number Eight....................................................................................37

Summary Of The Argument Of Issue Number Nine.........................................................37

Argument Of Issue Number Nine .....................................................................................37

Summary Of The Argument Of Issue Number Ten ..........................................................37

Argument Of Issue Number Ten.......................................................................................37

Summary Of The Argument Of Issue Number Eleven .....................................................39

Argument Of Issue Number Eleven..................................................................................39

Summary Of The Argument Of Issue Number Twelve .....................................................40

Argument Of Issue Number Twelve .................................................................................40

Anders Brief. ....................................................................................................................44

Prayer................................................................................................................................46

Certificate of Service .......................................................................................................47

Certificate of Compliance.................................................................................................48

Copy of Anders Correspondence Addressed To Nathaniel J. Frazier, Jr. .......................49

iv

# INDEX OF AUTHORITIES

CASE LAW                                                                                      PAGE

*Aguilar v. State,* 682 S.W. 2d 556 (Tex. Crim. App. 1985)......................................20

*Anders v. California,* 87 S. Ct. 1396 (1967)...........................................................1,44,45

*Ashby v. State,* 646 S.W.2d 641 (Tex.App. –Ft. Worth 1983).............................10

*Billodeau v. State,* 277 S.W. 3d 34 (Tex. Crim. 2009).........................................14

*Bone v. State,* 77 S.W. 3d 828 (Tex. Crim. App. 2002)..................... .....42

*Brooks v. State,* 323 S.W. 3d 893 (Tex. Crim. App. 2010)...................................21

*Devia v. State,* 718 S.W.2d 72 (Tex. App. –Beaumont 1986, no pet. )..................16

*Druery v. State,* 225 S.W. 3d 491 (Tex. Crim. App. 2007)...................................20

*Ex Parte Charlesworth,* 600 S.W.2d 316 (Tex.Crim.App.[Panel Op.] 1980)....,.........9

*Ex Parte Rubac,* 611 S.W.2d 848 (Tex.Crim.App.[Panel Op.] 1981)....,...............7,8

*Gear v. State,* 340 S.W. 3d 743 (Tex. Crim. App. 2011)......................................22

*Hall v. State,* 158 S.W.3d 470 (Tex. Crim. App. 2005)......................................19

*Hernandez v. State,* 988 S.W. 2d 770 (Tex. Crim. App. 1999)............................40

*Hernandez v. State,* 726 S.W. 2d 53 (Tex. Crim. App. 1986).............................42

*Jackson v. Virginia,* 443 U.S. 307 (1979)........................................................21

*Mallet v. State,* 65 S.W. 3d 59 (Tex. Crim. App. 2001)...................................42-43

*Martinez v. State,* 327 S.W. 3d 727 (Tex. Crim. App. 2010)..............................14

*Mitchell v. State,* 68 S.W. 3d 640 (Tex. Crim. App. 2002)................................42

*Montgomery v. State,* 810 S.W.2d 372 (Tex.Crim.App. 1990)............................8

*Rousseau v. State,* 855 S.W.2d 666 (Tex.Crim.App. 1993)..............................20

*Sandoval v. State,* 03-11-00416-CR, September 13, 2013....................................14

*Strickland v. Washington,* 466 U.S. 668 (1984).........................................40-41

*Thompson v. State,* 9 S.W. 3d 808 (Tex. Crim. App. 1999)..........................41,42,43

*Threadgill v. State,* 146 S.W.3d 654(Tex.Crim.App. 2004).......................................19

*Tillman v. State,* 354 S.W. 3d 425 (Tex. Crim. App. 2011). .... ...........................14

STATUTES                                                           PAGE

Texas Code of Criminal Procedure Article. 17.15..........................................7

Texas Code of Criminal Procedure Article. 21.02.......................................3,4

Texas Family Code Section 71.0021(b) ..............................................38

Texas Penal Code Section 2.01...........................................................20

Texas Penal Code Section 12.33.............................................................38

Texas Penal Code Section 12.42........................................................... 38

Texas Penal Code Section 22.01...........................................................21,37-38

Texas Rule of Appellate Procedure 21.8................................................17

# STATEMENT OF THE CASE

Nature of the Case:
In District Court Cause Number D-13-0958-SA, Nathaniel J. Frazier, Jr. was charged by indictment with having committed the offense of Assault of a Family/Household Member by Impeding Breathing or Circulation, a third degree felony. I C.R. 13-14. The indictment included an enhancement paragraph referencing a previous felony conviction exposing Frazier to the punishment range for a second degree felony. I C.R. 13-14.

Course of Proceedings:
Nathaniel J. Frazier. Jr., entered a plea of not guilty to the indictment and proceeded to jury trial on July 14, 2014. IX R.R. 12.

Trial Court's Disposition of the Case:
At the conclusion of a two day jury trial, Nathaniel J. Frazier, Jr. the jury found guilty of Assault of a Family/Household Member by Impeding Breathing or Circulation as alleged in the indictment. X R.R. 178; I C.R. 34-37; II C.R. 110. The trial court found the enhancement paragraph to be true. XI R.R. 16; I C.R. 34-37. The trial court assessed punishment and Frazier was sentenced to eighteen (18) years in TDCJ. XI R.R. 16; I C.R. 32, 34-37.

## ISSUES PRESENTED

A review of the complete Record results in an absence of finding any meritorious issues to be advanced in good faith on appeal. Any conceivable issues result from the following considerations:

1.    Was the indictment sufficient to support Nathaniel J. Frazier, Jr.'s conviction?

2.    Did the trial judge err in any of the court's pretrial rulings, including but not limited to rulings on motions to suppress, motions to quash, and motions for a speedy trial, which adversely impacted Nathaniel J. Frazier, Jr.?

3.    Did the trial judge err in any of the court's rulings during the course of trial, including but not limited to objections to admission or exclusion of evidence, objections premised on prosecutorial or judicial misconduct, and motions for mistrial, which adversely impacted Nathaniel J. Frazier, Jr.?

4.    Did the trial judge err in any of the court's post trial rulings, including on a motion for new trial, which adversely impacted Nathaniel J. Frazier, Jr.?

5.    Does the record indicate reversible error occurred during or in connection with jury selection?

6.    Does the record indicate correct instructions were provided to the jury?

7.    Was the evidence presented at trial sufficient to support Nathaniel J. Frazier, Jr.'s conviction?

8.    Does reversible error exist based on the failure of Counsel for Nathaniel J. Frazier, Jr. to object to fundamental error?

9.    Did the trial judge err in any of the court's rulings during the punishment phase of trial which adversely impacted Nathaniel J. Frazier, Jr.?

10.   Is Nathaniel J. Frazier, Jr.'s sentence within the applicable punishment

range for a habitual felony offender?

11. Does the Judgment accurately reflect the sentence imposed by the trial court and properly apply jail credit to Nathaniel J. Frazier, Jr.'s sentence?

12. Did Attorney John Sutton render ineffective assistance of counsel to Nathaniel J. Frazier, Jr.?

To the Honorable Justices of the Third Court of Appeals:

Appellant, Nathaniel J. Frazier, Jr., submits this Brief on appeal by and through his Appellate Counsel, Justin S. Mock. After a conscientious examination of the case, including a diligent review of the Record and applicable authorities, Counsel finds an absence of meritorious grounds for appeal and further submits the basis of any appeal in this case would be frivolous in nature. Therefore, Appellate Counsel Justin S. Mock submits the following *Anders Brief* on behalf of Appellant. *Anders v. State of California,* 386 U.S. 738 (1967).

## STATEMENT OF THE FACTS

Nathaniel J. Frazier, Jr. was charged by indictment with having committed the offense of assault of a family/household member by impeding breathing or circulation, a third degree felony. I C.R. 13-14. The indictment included an enhancement paragraph referencing a prior felony conviction exposing Frazier to the punishment range for a second degree felony. I C.R. 13-14. The trial court appointed attorney Danny Hardesty to represent Frazier on September 4, 2013. I C.R. 9. On March 3, 2014, the trial court relieved Hardesty and appointed John Sutton to represent Frazier. I C.R. 25. The case proceeded to jury trial on July 14, 2014.

1

The State's case against Frazier sought to establish the following facts and circumstances at trial: Frazier and Salinas were engaged in an intimate dating relationship; Frazier and Salinas argued on September 2, 2013, at her residence in San Angelo, Tom Green County, Texas; Frazier joined Salinas and her family at Lake Nasworthy that day; Frazier returned to Salinas' home that night and assaulted Salinas; Frazier struck Salinas, threw her to the ground and choked her, causing her to be unable to breathe.

Defense counsel aggressively cross examined the State's witnesses and argued the State ultimately failed to prove that the alleged victim was assaulted by Frazier.

At the conclusion of the guilt/innocence phase of trial, the jury found Frazier guilty of assault of a family/household member by impeding breathing or circulation. X R.R. 178; II C.R. 110. At the conclusion of the punishment phase of trial, the trial court found the enhancement paragraph contained in the indictment to be true and assessed punishment at e i g h t e e n (18) years in TDCJ. XI R.R. 16; C.R. 34-37.

Frazier filed a Motion for New Trial and Motion in Arrest of Judgment on July 17, 2014. I C.R. 38-39. Frazier filed Notice Of Appeal with the trial court on October 10, 2014. I C.R. 48. Frazier now appeals his conviction and sentence to this Honorable

Third Court of Appeals.

## SUMMARY OF ARGUMENT OF ISSUE NUMBER ONE

The indictment was sufficient to support Frazier's conviction.

## ARGUMENT OF ISSUE NUMBER ONE

Article 21.02 of the Texas Code Of Criminal Procedure lists the requisites of an indictment. *Texas Code Of Criminal Procedure, Article 21.02.* In order for an indictment to be deemed sufficient, Article 21.02 requires the following:

1.  It shall commence, "In the name and by authority of The State of Texas;"

2.  It must appear that the same was presented in the district court of the county where the grand jury is in session;

3.  It must appear to be the act of a grand jury of the proper county;

4.  It must contain the name of the accused, or state that his name is unknown and give a reasonable accurate description of him;

5.  It must show that the place where the offense was committed is within the jurisdiction of the court in which the indictment is presented;

6.  The time mentioned must be some date anterior to the presentment

of the indictment, and not so remote that the prosecution of the offense is barred by limitation;

7.    The offense must be set forth in plain and intelligible words;

8.    The indictment must conclude, "Against the peace and dignity of the State;" and

9.    It shall be signed officially by the foreman of the grand jury." *Texas Code Of Criminal Procedure, Article 21.02.*

The essential elements relevant to the offense with which Frazier was charged are contained in Section 22.01 of the Texas Penal Code. *Texas Penal Code Section 22.01.* A person commits the offense of assault if they intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse. *Texas Penal Code Section 22.01.*

Section 22.01(b)(2) states, in pertinent part, that Assault is a third degree felony if "committed against a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code," and "by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth." *Texas Penal Code Section 22.01(b).*

4

Section 71.0021(b) of the Texas Family Code defines a "dating relationship," as:

> "a relationship between individuals who have or have
> had a continuing relationship of a romantic or intimate
> nature. The existence of such a relationship shall be
> determined based on consideration of:
> (1) the length of the relationship;
> (2) the nature of the relationship; and
> (3) the frequency and type of interaction between the
> persons involved in the relationship." *Texas Family
> Code Section 71.0021(b)*.

The language of the indictment complies with all of the requirements of Texas Code Of Criminal Procedure Article 21.02 and includes all of the essential elements of Texas Penal Code Section 22.01. There is no indication that the indictment was insufficient. Reversible error does not exist based on an insufficient indictment.

## SUMMARY OF ARGUMENT OF ISSUE NUMBER TWO

No adverse pretrial rulings resulted in reversible error.

## ARGUMENT OF ISSUE NUMBER TWO

The Reporter's transcript includes several pretrial hearings which took place over the course of Frazier's case. Upon his arrest, bond was initially set at $150,000.00. I C.R. 8. It appears from the Clerk's record that a hearing was held before the magistrate to address Frazier's request for a bond reduction. II C.R. 8-10. It does not appear that a record was made of this proceeding, and Frazier's

5

request was denied by the magistrate. I C.R. 12.

Upon indictment, Frazier's bond was changed to $75,000.00. I C.R. 13. The Record reflects the trial court conducted three hearings concerning Frazier's bond. On November 25, 2013, a hearing was held on the State's Motion to Increase Bond. II C.R. 10-11. The State sought an increase of bond to $150,000.00. Frazier, through his counsel, sought for the bond to be lowered or remain at $75,000.00. The testimony and evidence presented at the hearing indicated Frazier had, through correspondence from jail, discussed changing his name and getting a new driver's license and been in contact with people in Michigan. Testimony was also presented that Frazier had attempted to contact the victim, and that the victim feared him. II R.R. 12-13. The trial court found that Frazier had attempted to contact the victim, and granted the motion and increased the bond amount to $100,000.00. II R.R. 26-27; I C.R. 15.

On January 2, 2014, a hearing was held on Frazier's "Application for Writ of Habeas Corpus and Motion for Reasonable Bail." I C.R. 16-21; III R.R. 1. The testimony at the hearing largely focused on Frazier's medical condition and the need for surgery. III R.R. 4-13. Following the hearing, the trial court denied the motion without prejudice to the request being renewed by the defense. The trial court requested specific information concerning the surgery and where it

6

would be conducted, and reserved its right to change its ruling upon receiving that information. III R.R. 14-16; I C.R. 23.

On June 27, 2014, the trial court addressed Frazier's "Motion for Personal Recognizance Bond or In the Alternative, Motion to Reduce Bond (Humanitarian Request." II C.R. 54-55. The evidence presented at the hearing included that Frazier was unable to meet the current bond, and that he wished to attend the funeral for his brother. V R.R. 5-8. At the conclusion of the hearing the trial court denied the request for a personal recognizance bond, but granted Frazier's request for a bond reduction. V. R.R. 10. The bond was reduced to $75,000.00. V R.R. 10; I C.R. 30.

In setting a bail amount, the trial court should consider: 1) bail should be sufficiently high to give reasonable assurance that the undertaking will be complied with; 2) the power to require bail is not be used as an instrument of oppression; 3) the nature and circumstances of the offense; 4) the ability to make bail; and 5) the future safety of the alleged victim and the community. *Texas Code of Criminal Procedure Art. 17.15*. Other factors should also be considered, such as the accused's work record, family and community ties, residency length, prior criminal record, compliance with former bond conditions, outstanding bonds, and aggravated circumstances and the range of punishment of the offense

7

charged. *Ex Parte Rubac*, 611 S.W. 848, 849-850 (Tex. Crim. App. [Panel Op.] 1981).

A trial court's denial of a bond reduction is reviewed for an abuse of discretion. *Ex Parte Rubac*, 611 S.W. 848, 850 (Tex. Crim. App. [Panel Op.] 1981). In determining whether a court abused its discretion, it must be determined whether the court "acted without reference to any guiding rules or principles, or whether the act was arbitrary or unreasonable." *Montgomery v. State*, 810 S.W. 2d 372, 380 (Tex. Crim. App. 1990).

On November 25, 2013, evidence was presented to the court regarding Frazier's intent to change his name, ties to people in Michigan, efforts to contact the victim, prior incidents involving Frazier and the victim, and the victim's fear of Frazier. II R.R. 12-15. As Frazier's indictment included a provision setting his bond at $75,000.00 and requiring no contact with the victim, the trial court was not arbitrary or unreasonable in raising the bond upon receiving evidence of Frazier's repeated contact efforts.

On January 2, 2014, the trial court heard evidence that Frazier was unable to make bond, which was then set at $100,000.00. III R.R. 5-6. The trial court also heard testimony from Frazier that he needed surgery, perhaps due to cancer. III R.R. 7-10; I C.R. 20. The trial court took notice of the evidence that was

8

presented at the bond hearing on November 25, 2013, including Frazier's attempts to contact the victim, his plans to change his name, his contact with people in another state, and the victim's continuing fear of Frazier. III R.R. 14; II R.R. 12-13. Based on the evidence presented, the trial court was not arbitrary or unreasonable in denying Frazier's motion. The trial court did not abuse its discretion.

At the bond reduction hearing on June 27, 2014, Frazier again testified that he was unable to make his current bond. V R.R. 6. Frazier sought a personal recognizance bond to allow him to attend his brother's funeral. In the alternative, Frazier requested a bond reduction to $15,000.00, as his family or friends would be able to make the necessary down payment for a bond of that amount. V R.R. 6-8. After taking judicial notice of the prior hearings to the extent they could be recalled, the trial court denied the request for a P.R. bond, but granted a bond reduction to $75,000.00. V R.R. 10-11. Inability of a defendant to make bail is a factor to be considered, but that factor alone does not control the amount of bail. *Ex Parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. [Panel Op.] 1980). The burden to show the bond was excessive and warranted reduction rested with Frazier. The testimony offered failed to meet that burden in light of the evidence offered at prior bond hearings. The trial court did not abuse its

9

discretion in denying Frazier's request for a P.R. bond.

A thorough review of the record reveals no error in the trial court's rulings concerning Frazier's bond.

The trial judge has the responsibility to determine whether or not out-of-state witnesses are material and necessary before issuing a certificate to a sister state requesting that those out-of-state witnesses be subpoenaed to testify in criminal matters in this State. Accordingly, it is incumbent upon appellant to prove to the trial court that the out-of-state witness is material and necessary. The trial court's determination, as such, will not be overruled on appeal absent abuse of discretion. *Ashby v. State*, 646 S.W.2d 641, 643 (Tex.App. 1983).

In the instant case, Attorney Sutton filed an Application and Motion to Secure A Material and Necessary Out-of-State Witness as to Miran Frazier of Michigan, Betel T. Frazier of Michigan, Rich Lester of Michigan, Karl Maydwell of New Mexico, and Guy Sohov of Michigan. II C.R. 59-78. In the filings, it was asserted that each witness knew Frazier was a faithful husband, knew Frazier's residence during relevant times, and knew of Frazier's reputation for truthfulness and being a law-abiding citizen. II C.R. 59-78. It was also asserted that Karl Maydwell and Guy Sohov "may have knowledge about the theft of Defendant's briefcase and the bank check that was inside the briefcase by Sandra Salinas." II

10

C.R. 71-72, 75-76. The trial court denied the requests. I C.R. 31.

The hearing on the requests took place on July 1, 2014. VII R.R. 1. At the hearing, Frazier testified that the witnesses included his wife, uncles, cousin, and attorney. VII R.R. 8-9. Frazier testified that while none of the witnesses were in San Angelo, Texas at the time of the alleged incident, Betel T. Frazier and Karl Maydwell were on the telephone with him from the time he arrived at the location until his telephone died at around the time he was detained in the sheriff's vehicle. VII R.R. 10-12. Frazier testified that Sohov was his federal lawyer and he had records of the conversation between Frazier and his wife. VII 15-19. Frazier testified that he was with his wife and Maydwell before coming to San Angelo on September 2, 2013, and they would provide testimony as to why he came to San Angelo. VII R.R. 20-21. Frazier testified that he believed each of the witnesses would appear for trial without a subpoena. VII R.R. 23.

After hearing evidence and argument, the trial court denied the motions citing a lack of materiality of the witnesses and the likelihood that they would appear voluntarily. Miran Frazier and Rich Lester's anticipated general character testimony did not rise to a level of being material or necessary. General testimony regarding a telephone conversation or records of that conversation, absent more detail, did not establish to the trial court that the testimonies of Betel

11

T. Frazier, Karl Maydwell, or Guy Sohov were material or necessary. The trial court did not abuse its discretion in denying the requests to secure out-of-state witnesses.

In reviewing the record as a whole, no pre-trial rulings of the trial court resulted in reversible error.

## SUMMARY OF ARGUMENT OF ISSUE NUMBER THREE

No adverse rulings during trial resulted in reversible error.

## ARGUMENT OF ISSUE NUMBER THREE

During the trial, there were several rulings adverse to Frazier. In the testimony of Sandra Salinas, Counsel for the State and Defense brought to the trial court's attention an issue concerning the use of a prior felony conviction of Salinas for impeachment purposes. Counsel for the State objected to the use of the prior conviction by the defense. IX R.R. 95-96. After Counsel for Frazier took Salinas on voir dire, the trial court sustained the objection under Rule 609 of the Texas Rules of Evidence. IX R.R. 98-99.

Prior to Frazier testifying, a hearing was held outside the presence of the jury on the issue of the admissibility of evidence of a prior conviction of Frazier for impeachment purposes. Frazier's counsel objected that Frazier was not the

12

same person convicted and also that the prejudicial effect of admitting the conviction would outweigh the probative value.

At the hearing, Frazier testified that he was not the same person convicted of Involuntary Manslaughter in the Michigan judgment. He was advised of his rights under the Fifth Amendment and given an opportunity to recant. He refused to recant. Prior to the trial court's ruling, Counsel for Frazier objected that the convictions fell outside the time limits imposed by Rule 609. X R.R. 25-26.

The trial court initially ruled that while the individual previously convicted was likely Frazier, the prejudicial effect of allowing such impeachment evidence outweighed the probative value. X R.R. 26-29. Later, following the direct examination of Frazier, the testimony of Terri Adams was taken outside the presence of the jury concerning her examination of Frazier's fingerprints compared to the Michigan felony judgment. X R.R. 71-74. Counsel for Frazier again argued that the conviction was not admissible as it exceeded the time limit provided in Rule 609. The trial court ruled that while the conviction may not be admissible for impeachment purposes under Rule 609, it was admissible for other purposes. The trial court permitted the State to ask Frazier about the previous convictions in the presence of the jury. X R.R. 82, 90-91.

An erroneous admission of an appellant's prior conviction will be reversed

only if the admission affected his substantial rights by exerting 'a substantial and injurious effect or influence in determining the jury's verdict.' "The error is harmless if we have 'fair assurance that the error did not influence the jury, or had but a slight effect." In this case, in reviewing the record as a whole it is clear that admitting Frazier's prior convictions had minimal effect on the jury. It is more likely that the corroborated testimony of the victim, the photographs and tangible items admitted into evidence, and the other evidence presented which supported the verdict, resulted in a finding of guilt.

In addition to the above, there were other minor objections that resulted in rulings adverse to Frazier. An appellate court applies the abuse of discretion standard when reviewing a trial court's ruling on the admission or exclusion of evidence. *Tillman v. State*, 354 S.W. 3d 425, 435 (Tex. Crim. App. 2011); *Sandoval v. State*, 03-11-00416-CR, September 13, 2013. The trial court will not be found to have abused its discretion unless its decision "lies outside the zone of reasonable disagreement." *Martinez v. State*, 327 S.W. 3d 727, 736 (Tex. Crim. App. 2010); *Sandoval v. State*, 03-11-00416-CR, September 13, 2013. The reviewing court considers the trial court's ruling based on the evidence before the trial court at the time of the ruling and the trial court's decision should be upheld if it lies within the zone of reasonable disagreement. *Billodeau v. State*, 277 S.W. 3d 34, 39 (Tex.

Crim. 2009); *Sandoval v. State*, 03-11-00416-CR, September 13, 2013.

During the cross-examination of Sandra Salinas, the defense sought to establish information as to whether her business sold synthetic drugs. IX R.R. 107. The State objected to the relevance of the matter, and the trial sustained the objection. IX R.R. 108. The trial court did not abuse its discretion in finding that inquiry to be irrelevant. Thereafter, the State objected to a compound question posed by defense counsel. The objection was sustained by the court, defense counsel re-phrased the questions and obtained the information he sought. There was no error or harm in the court's ruling.

The State objected to the testimony of Victor Dancer, and his testimony was taken outside the presence of the jury. X R.R. 31. Following his testimony, the State specified that the objection was to testimony regarding specific conduct of the victim, Sandra Salinas. X R.R. 37. The trial court sustained the objection and ruled Dancer would be permitted to testify as to his opinion of the victim's truthfulness or untruthfulness. X R.R. 37. Counsel for Frazier argued that the testimony sought to be elicited would be evidence of a pertinent character trait of a victim and was admissible under Texas Rule of Evidence 404. X R.R. 38. The trial court reiterated its previous ruling. X R.R. 39.

During the direct examination of Thomas Moriarty, the State offered

Exhibit 23, purported jail correspondence from Frazier, and Counsel for Frazier objected to the authenticity of the document. X R.R. 112-113. The trial court overruled the objection and admitted State's Exhibit 23. X R.R. 113. Moriarty testified that he identified the correspondence as Frazier's based on the content. Texas Rule of Evidence 901 provides that evidence can be authenticated by its contents or other factors. X R.R. 113. Detective Moriarty's testimony was evidence sufficient to support a finding that the item was Frazier's correspondence.

The State called Sasha Smith as a rebuttal witness. Counsel for Frazier objected that Smith was not included on the witness list provided by the State pursuant to the trial court's discovery order. X R.R. 122.

The State cannot anticipate exactly which rebuttal witnesses will become necessary until the defense rests. *Devia v. State*, 718 S.W.2d 72, 74 (Tex.App.--Beaumont 1986, no pet.). If the State calls a rebuttal witness, the burden is on the defendant to show the prosecution acted in bad faith in failing to disclose the name of the witness. *Id.* The defense provided no evidence or argument that the State acted in bad faith or that the defense was unfairly surprised. The trial court did not abuse its discretion in allowing the testimony.

There is no indication the trial judge abused his discretion in rendering

16

any rulings adverse to Frazier during the trial. Based on a thorough review of the Record and applicable legal authorities, no reversible error exists based on adverse rulings made during trial.

## SUMMARY OF ARGUMENT OF ISSUE NUMBER FOUR

No adverse rulings on post-trial motions resulted in reversible error.

## ARGUMENT OF ISSUE NUMBER FOUR

A Motion For New Trial was filed on behalf of Frazier on July 17, 2014. I C.R. 38-39. It does not appear a full hearing on the Motion For New Trial was requested or took place, which is not uncommon. The Record is void of any indication the trial court ruled on the Motion For New Trial and Motion in Arrest of Judgment. Such a motion, if not ruled upon within 75 days after imposing or suspending sentence, will be deemed denied after the expiration of the 75 day period. *Texas Rules of Appellate Procedure 21.8.* There is no indication that the trial court abused its discretion in failing to rule on Frazier's Motion For New Trial, and no reversible error exists based on adverse rulings on post-trial motions.

## SUMMARY OF ARGUMENT OF ISSUE NUMBER FIVE

Reversible error does not exist based on jury selection.

## ARGUMENT OF ISSUE NUMBER FIVE

The Reporter's transcript documents the jury selection process. VIII R.R. 4-136. The State and the Defense had an opportunity to conduct their own voir dire. VIII R.R. 50-120. The Clerk's Record contains documentation of strikes exercised by the State and the Defense during the jury selection process. II C.R. 91-96. The Reporter's Transcript reflects the District Clerk swore in the individuals selected to serve on the jury as required by law. VIII R.R. 130. The record reflects the trial judge issued preliminary instructions to the empaneled jurors as required by law. VIII R.R. 131-136; II C.R. 103-104. There is no indication based on a thorough review of the Record that any error took place during the jury selection process resulting in reversible error.

## SUMMARY OF ARGUMENT OF ISSUE NUMBER SIX

Reversible error does not exist based on the instructions provided to the jury.

## ARGUMENT OF ISSUE NUMBER SIX

The Record documents the instructions provided to the jury by the trial judge. II C.R. 105-110. The Reporter's transcript reflects the trial judge read the jury instructions out loud before the jury began deliberations during the guilt/innocence phase of trial. X R.R. 148. The jury instructions are included

18

in the Clerk's Record. II C.R. 105-110. The Reporter's transcript reflects charge conferences were conducted prior to the presentation of the charge to the jury. X R.R. 133-146. Attorney Sutton objected to the charge due to lack of inclusion of an instruction on the lesser-included offense of Class A assault. X R.R. 135-137. Sutton argued that the lesser-included offense could arise if the jury found less than the required proof for either that Frazier and Salinas were in a dating relationship or that the assault was perpetrated by impeding breathing or circulation. X R.R. 137. After hearing argument of counsel and reviewing applicable caselaw, the trial court did not include the charge requested by the defense, essentially overruling the objection and denying the request. X R.R. 146. In doing so, the trial court found that there was no evidence by which a rational fact-finder could find Frazier was only guilty of the lesser-included offense. X R.R. 146. The relevant jury form is included in the Clerk's Record. II C.R. 110.

A trial court's ruling on a request for a lesser-included offense instruction is reviewed for an abuse of discretion. *Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004). In order to show that he was entitled to a lesser-included offense instruction, Frazier must satisfy a two-prong test requiring a determination of: 1) whether the requested lesser-included charge is a lesser-included offense of the indicted offense; and 2) whether the record contains some evidence that would

19

permit a rational jury to find that the defendant is guilty only of the lesser-included offense. *Hall v. State*, 158 S.W.3d 470, 473 (Tex. Crim. App. 2005); *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993); *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985).

In the instant case, while Class A misdemeanor assault is a lesser-included offense, the record is devoid of evidence that would permit a rational jury to find that the defendant is guilty only of Class A Assault.

Appellate courts asked to review jury charge error first determine whether error exists in the jury charge, and if so, determine if sufficient harm resulted from the error to warrant reversal. *Druery v. State*, 225 S.W. 3d 491, 504 (Tex. Crim. App. 2007).

A thorough review of the Record indicates no error exists based on the instructions provided to the jury at trial resulting in reversible error.

## SUMMARY OF ARGUMENT OF ISSUE NUMBER SEVEN

The evidence presented at trial was sufficient to support Frazier's conviction.

## ARGUMENT OF ISSUE NUMBER SEVEN

*Burden Of Proof And Elements Of The Offense:*

At trial the State of Texas was required to prove each essential element of the

offense beyond a reasonable doubt. *Texas Penal Code Section 2.01.* The essential elements relevant to the assault charge brought against Frazier are contained in Section 22.01 of the Texas Penal Code and in the indictment. *Texas Penal Code Section 22.01;* C.R. 13-14. The essential elements the State was required to prove at trial include:

a)    The offense was committed on or about September 3, 2013, in Tom Green County, Texas;

b)    Frazier was the individual who committed the offense;

c)    Frazier committed the offense intentionally, knowingly or recklessly;

d)    Frazier caused bodily injury to Salinas by impeding the normal breathing or circulation of blood by applying pressure to the throat or neck of Salinas; and

e)    Frazier had or previously had a dating relationship with Salinas. *Texas Penal Code Section 22.01; Texas Family Code Section 71.0021(b);* I C.R. 13-14.

*Standard Of Review On Appeal For Sufficiency Of The Evidence*:

The Texas Court of Criminal Appeals has held that when an appellate court is asked to review the sufficiency of the evidence presented at trial, the appellate court should apply the standard of review for legal sufficiency as set out by the United States Supreme Court in *Jackson v. Virginia. Brooks v. State,* 323 S.W. 3d 893, 895, 916 (Tex. Crim. App. 2010), *Jackson v. Virginia,* 443 U.S. 307, 316 (1979). The application of the *Jackson* standard requires the appellate court to review all of the evidence in the light most favorable to the verdict and determine,

based on that evidence, and reasonable inferences therefrom, if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, *Brooks*, 323 S.W. 3d at 895, 899, 916; *Gear v. State*, 340 S.W. 3d 743, 747 (Tex. Crim. App. 2011).

The evidence presented during the guilt/innocence phase of trial included the live testimony of eight witnesses, thirty-one photographs, two letters, and a fingerprint card. I R.R. 8-13.

Sergeant Jason Corbell of the Tom Green County Sheriff's Department testified at trial. IX R.R. 15. On September 2, 2013, he was on patrol and received a call to respond to a domestic disturbance at 9761 Grapevine, Tom Green County, Texas. IX R.R. 15-16. He arrived on the scene, walked to the front of the house and heard a female gasping for air. IX R.R. 16. He was able to hear through a plexiglass window, and heard a male say something to the effect of, "I am about to make your worst dreams come true." IX R.R. 17. Corbell knocked on the door. He heard a male yell, "What?" and a female screaming for help. IX R.R. 17. Corbell believed the male was going to kill the female, and called dispatch to inform them he was going to make forced entry into the residence. IX R.R. 18. As he approached the door, it opened to reveal a female who was out of breath and a male standing behind her. IX R.R. 19. The eyes of

22

the female were swollen shut. She had blood in her teeth and on her lips. She was sobbing and in pain. IX R.R. 19.

The male at the scene identified himself as Nathan Frazier. IX R.R. 19. Corbell identified the defendant as being the same individual he encountered at the scene. IX R.R. 20. Corbell cuffed Frazier at the scene and moved he and the female out of the house. IX R.R. 20. Corbell washed off Frazier's face with the water hose to get pepper spray off of his face, and gave the female some water. IX R.R. 21.

The female was identified as Sandra Salinas. IX R.R. 22. She told Corbell that Frazier had struck her and broke her jaw, pepper sprayed her, and strangled her several times. IX R.R. 22. Salinas identified Frazier as her boyfriend and indicated they lived together in the residence. IX R.R. 22. Frazier also indicated that he resided at the house. IX R.R. 23. Initially, Frazier told Corbell that he has sprayed Salinas with pepper spray after she sprayed him. He later denied spraying her. He also denied hitting her. IX R.R. 23.

Corbell observed Salinas to have cuts on her nose and lip, as well as red marks around her neck. Her eyes were swollen shut from the pepper spray. IX R.R. 24. Salinas' face and shirt were covered with pepper spray. IX R.R. 25. Frazier had pepper spray on his face, as well as a vertical scratch on the front of

23

his neck. IX R.R. 25. Corbell testified that typically scratches such as those were defensive wounds made by someone who is trying to claw to get away. IX R.R. 25.

Corbell identified State's Exhibits No. 1-19. The photographs, which depicted the scene, Salinas' injuries, and Frazier, were admitted without objection. IX R.R. 27-29. Salinas reported to Corbell that when she heard Frazier pull up she locked herself in the bedroom and called law enforcement. Frazier attempted to kick in the back door, finally gained entry to the house through a window, then kicked in the bedroom door. IX R.R. 33. Frazier told Corbell he entered the house through the door. IX R.R. 36. Corbell located a black revolver at the scene, which Frazier denied knowledge of. IX R.R. 37.

Corbell placed Frazier in the back seat of his vehicle with the air conditioner on. At some point the medics indicated Frazier was attempting to kick out the windows of the car. Corbell spoke with Frazier who denied he was trying to kick out the windows and asked if Salinas was going to jail. IX R.R. 38. When Corbell indicated Salinas was not going to jail, Frazier began complaining on chest pains and appeared to fall unconscious. IX R.R. 39. It had been approximately 45 minutes from the time Corbell arrived on scene before Frazier complained of medical issues. IX R.R. 39. Frazier was treated by the medics on

scene and taken to the hospital. Salinas was also transported to the hospital. IX R.R. 40.

Finally Corbell testified that in domestic choking cases it would be typical to see strangulation marks lengthwise on the neck of the victim and marks where blood has been pinched between fingers. IX R.R. 41. Upon his recollection being refreshed by his report, Corbell clarified that he heard Frazier say to Salinas, "You are in for the scare of your life." IX R.R. 44.

Upon cross examination Corbell indicated that there were two vehicles at the residence when he arrived. IX R.R. 45. He did not inspect the vehicles. There were no individuals present at the residence other than Frazier and Salinas. IX R.R. 46. Salinas opened the door for Corbell, which he could tell was locked. An alarm was going off while he was in the house. IX R.R. 47; 52-53. Corbell admitted that things were not included in his report that should have been, including Frazier's statement that he resided at the house. IX R.R. 50. He testified that construction was underway at the house, but the door to the bedroom did not appear to have been removed as a part of that construction. IX R.R. 51.

Deputy Corey Speck of the Tom Green County Sheriff's Department testified at trial. IX R.R. 60. Speck responded to the scene to back up Sergeant Corbell. IX R.R. 61. At the scene he took photographs and gathered evidence.

25

He saw Frazier and Salinas at the scene. IX R.R. 61. While walking through the scene, he noticed a spot of saliva and blood mixture in the kitchen. Salinas informed Speck that she spit that out after the incident. IX R.R. 62. Speck noticed Salinas to have trouble with her eyes, swelling on her face, early bruising to her face, and red marks around her neck. IX R.R. 63.

The victim, Sandra Salinas, testified at the trial. IX R.R. 65. Salinas resided at 9671 Grapevine Avenue in San Angelo on September 2, 2013. IX R.R. 66. On that day she prepared to go the lake with her daughter, her daughter's family and Frazier. IX R.R. 67. Salinas identified Frazier as being the defendant at the trial. IX R.R. 67. Salinas first met Frazier around November 2012. At that time she knew him as "JB." IX R.R. 68. They started dating at that time, and seeing each other intimately. IX R.R. 69. Later, he identified himself as being Kohrionoe Smith. IX R.R. 69. In April or May 2013, she learned his name was Nathaniel Frazier. IX R.R. 70.

On the day of the incident Frazier became upset because Salinas was texting someone. He indicated he was not going to the lake. IX R.R. 70. Salinas went to the lake without Frazier. He arrived later in the evening, and was upset because Salinas left him outside the house earlier. IX R.R. 73. Frazier was also mad because Salinas did not leave the lake to check on him. After he yelled at

26

her, they all stayed at the lake for a while. IX R.R. 75. Later, Salinas gave Frazier a hug and told him she was going back to the house. He left before she did. IX R.R. 76. Frazier had been staying with her in the house off and on. After driving off, Frazier pulled over. Salinas stopped to talk to him and he was upset. IX R.R. 77. Salinas told Frazier she was going home and he responded that he was going to sleep at the lake. She told him she wanted him out of the house. IX R.R. 78. She wanted him out of her life. Salinas went home, set the alarm and locked the doors and windows. IX R.R. 79. She called law enforcement to request help because she heard Frazier coming to the house speeding and peeling out. Frazier started banging on windows and doors, and finally entered through an unsealed window in front. IX R.R. 80. Salinas knew it was Frazier because he was yelling and cussing at her. She heard him fall to the floor after coming through the window. IX R.R. 81.

Salinas was in a bedroom and locked the door. Frazier broke the door, threw her against the wall, punched her face and threw her to the ground by her hair. IX R.R. 82. She was holding mace. When he hit her, the mace flew out of her hand. Frazier then got on top of her with his knees on her chest, told her he was going to kill her and began choking her. IX R.R. 83. He had both of his hands on her neck and she could not breathe. She believed this went on for

27

approximately 13 minutes. He also pushed, slapped and punched her. IX R.R. 84. During the struggle, Salinas testified that she was able to locate the mace and she sprayed him in the face to get him off of her. He grabbed the mace from her and sprayed her in the face while he was choking her. IX R.R. 85. She fought him, but was never able to get him off of her. IX R.R. 85.

Frazier finally stopped the assault when the law enforcement officer knocked on the door. At that point, Frazier jumped up and Salinas was able to run to the front door and unlock it. IX R.R. 86.

Salinas did not recall a gun being used by Frazier that night. She went to the hospital later that night. IX R.R. 88. She had injuries consisting of a broken nose, bruising to her face and body, and busted gums. IX R.R. 89. Salinas identified State Exhibits 20 through 22 as being photographs taken of her bruising several days after the incident. The exhibits were admitted without objection. IX R.R. 90. Salinas again confirmed that she was involved in an intimate relationship with Frazier at the time of the incident. She was also in the process of divorcing her husband at the time. At the time of the trial, the divorce was not yet final, but she was no longer intimately involved with her husband or Frazier. IX R.R. 91-92.

On cross-examination, Salinas indicated that she did not recall a gun being

28

used, and that she could not have seen a gun because she was unable to see due to being maced. She had previously wrapped the gun and put it in a drawer, and had not seen it since. She had no idea if Frazier knew the location of the gun. IX R.R. 94.

Salinas confirmed that Frazier did not have a key to the house, and that Frazier was doing "work" on the house. She denied that Frazier had tools at the house. IX R.R. 100. She confirmed that she initially met Frazier when he was doing work at her home in Odessa, Texas. Then she knew him as "JB" or John Brown. IX R.R. 102. That name was on his work name tag. He later provided her with another name and she continued to date him. She testified that Frazier is manipulative and she continued in the relationship because of the reasons he gave her for using a different name. IX R.R. 104. She provided additional testimony regarding the alarm system at the home on Grapevine. IX R.R. 105-106. She had been trying for some time to end her relationship with Frazier, but was unsuccessful because he was manipulative and did not want it to end. She denied trying to end the relationship by bringing false charges against Frazier and denied that Frazier came to the residence to pick up his tools. IX R.R. 109. She denied letting Frazier into the house that evening, denied Frazier saw something in the house she did not want him to see, and denied she held the gun on him to

29

get him to leave. IX R.R. 110-111.

Salinas testified that she and her family went camping at Lake Nasworthy regularly, and that Frazier had previously met her daughter and camped with them. IX R.R. 113-114. They probably drank some beer at the campsite between when she arrived around 1:00 or 2:00 p.m., and when she left at around 9:00 p.m. IX R.R. 118-119.

On re-direct examination Salinas confirmed that the window through which Frazier entered was plexiglass and was held in place by duct tape. If the duct tape was unsealed, it would not trigger the house alarm. She testified that Frazier would have been aware of that. IX R.R. 121.

Victor Dancer was called as a witness at the trial by the defense. He testified that he was currently married to Salinas, and had been married to her for nine years. He knew her for three years prior to their marriage. A divorce was pending at the time of trial. He further testified that, in his opinion, Salinas is not truthful. X R.R. 42-43.

Corey Speck was briefly recalled by the defense to identify Defense Exhibits 1-9, which were admitted without objection.

Frazier testified in his defense at the trial. He testified that he was in Carlsbad, New Mexico on September 2, 2013, until approximately 4:00 p.m.

when he drove to San Angelo. He was headed to the house on Grapevine. X R.R. 50. It took him approximately five hours to get to San Angelo. He did not go to Lake Nasworthy with Salinas. He arrived at the house near 10:00 p.m. to pick up his tools. X R.R. 51. When he arrived at the house, a vehicle was speeding out of the driveway. X R.R. 51. The vehicle was a white Chevy Suburban. After seeing the vehicle, Frazier called his wife to let her know he had arrived. He knocked on the door of the house, and after several minutes Salinas answered. She told him to come in and grab his things. X R.R. 52. Frazier testified that he was grabbing his tools and he notices boxes from a smoke distributor and other things that should not have been there. Frazier claimed he became nervous and began walking towards the front of the house with his tools. He stated Salinas ran into a bedroom once she realized what he had seen. He believed the items he saw were drugs. X R.R. 53. Salinas came out of the room with a gun and told him to leave. He testified that Salinas yelled at him and fired a shot to show him the gun was loaded. He further testified that Salinas told him that she would "get away with it," because they would believe her. X R.R. 54.

Frazier testified that law enforcement arrived at around 10:10 or 10:15. At that time he was laying on the floor after Salinas pepper sprayed him. He claimed that after she approached him with the gun, she sprayed him and told him to get

31

on the floor. Salinas ran back to the room, and he could see through the window that the sheriff had arrived. Frazier stayed on the floor out of fear of being harmed and told Salinas to open the door. X R.R. 55. Once he heard the sheriff knock on the window, he began yelling for help and trying to open the door. He was unable to open the door because it was dead-bolted and required a key to unlock it. X R.R. 56.

Frazier stated that eventually Salinas used a key to open the door, and by doing so set off the house alarm. Once the door was opened, Frazier testified that he began telling the sheriff what happened. X R.R. 57.

Frazier denied touching or injuring Salinas on September 2, 2013. He denied choking her. He testified that he saw Salinas' injuries when she opened the door upon his arrival at the house. X R.R. 61. He denied knowledge of who caused injury to Salinas, but believed it was the individual he saw leaving as he pulled up. X R.R. 58. Frazier confirmed that he fell unconscious at some point and woke up in the hospital. He claimed to still have his Bluetooth in his ear with his wife on the line when he was placed in the sheriff's car. X R.R. 59.

Frazier denied having an intimate relationship with Salinas. He testified that the only relationship he had with her was of a business nature. He denied dating her, ever spending the night with her or being intimate with her. X R.R.

32

60-61. Frazier testified that he is married and faithful to his wife. X R.R. 61. The only possible motive he could identify for Salinas claiming he assaulted her was so that he could not disclose seeing the drugs and other items in her home. X R.R. 61-62.

Frazier identified photographs of cameras installed around the house at the request of Salinas, as well as photographs of the gun Salinas pointed at him. X R.R. 63. He also identified the remaining photographs admitted as defense exhibits. X R.R. 64-66.

On cross-examination, Frazier testified that he had been to the Grapevine residence on one prior occasion to install cameras. X R.R. 87. Frazier stated he had seen Salinas on two or three prior occasions and only related to business. X R.R. 88. Frazier testified that his wife's name is Bethel and she lives in Southfield, Michigan. He has six brothers and one sister. His parents are deceased. X R.R. 89.

Frazier admitted that he has two prior felonies, a vehicular manslaughter and a possession of narcotics case. X R.R. 90-91. He testified that Salinas pulled the gun on him as he was returning to the front of the house from the laundry room. As he entered the living room, she fired a shot. He testified that he told law enforcement that she fired a shot and showed them the bullet hole in wall. X

R.R. 95-96. He stated he did not tell the officers about the drugs in the house. X R.R. 98. He said he was conscious for ten to fifteen minutes after law enforcement arrived, and testimony from the sergeant to the contrary was a lie. X R.R. 99. Frazier testified that he did not live at the Grapevine address and he never told law enforcement that he did reside there. X R.R. 99-100.

Thomas Moriarty, a detective with the Tom Green County Sheriff's Department, testified at the trial. X R.R. 107. Under his instruction, an ATF firearm trace was performed on the gun found at the scene. The result of the trace was that the gun was stolen from Detroit, Michigan. X R.R. 110. Moriarty identified inmate correspondence he believed to have been authored by Frazier. X R.R. 111-112. Said correspondence was admitted into evidence as State Exhibit 23. X R.R. 114. The correspondence indicated it was written by, "Kohrione Smith a/k/a J.B., N. Frazier, Number 90117." X R.R. 114.

Terri Adams, a fingerprint examiner with the San Angelo Police Department, was called by the State to testify. X R.R 116. She conducted a fingerprint examination in this case. She took Frazier's fingerprints and compared them to those in an existing judgment. The name on the judgment was Nathaniel J. Frazier, Jr. It was her opinion that both sets of fingerprints were made by the same person. X R.R. 117. A certified copy of the judgment was

admitted as State Exhibit 25 without objection.

Adams further testified that Frazier initially identified himself to her as Nathan Frazier and gave a birthdate of 4/22/77. She again asked him the year and he responded " '77." After taking Frazier's fingerprints, Frazier advised her that the year of his birth was actually 1975. X R.R. 118.

Sasha Smith testified at the trial as a rebuttal witness for the State. X R.R. 123. Smith is the daughter of Salinas. She testified that she knows Frazier as Kohrione Smith, and that he was dating her mother. X R.R. 124. Smith identified Frazier in the courtroom as the individual she knows as Kohrione Smith. X R.R. 125. She stated she has seen Frazier twenty or more times, and each time he was with Salinas. X R.R. 125.

Smith testified that on September 2, 2013, she and her family were in San Angelo at the lake. Frazier arrived later, stayed in his truck for a while and then joined them fishing. He stayed two to three hours. X R.R. 125-126. They all left at the same time, and Salinas and Frazier were headed home. As she was driving home, Smith became concerned when she could not reach Salinas by phone. She then received a call from the alarm system at Salinas' house. She told them to call law enforcement and was then advised law enforcement was already at the scene. X R.R. 127-128.

35

The indictment included an enhancement paragraph referencing a prior final felony conviction to which Frazier entered a plea of not true. VI R.R. 16; I C.R. 13-14. Evidence Frazier received the prior felony conviction in accordance with the enhancement paragraph was admitted into evidence without objection during the punishment phase of trial in the form of a self-authenticating pen packet. XII R.R. State's Exh. 26; XI R.R. 10.

State's Exhibit 26 included documentation in support of Frazier being finally convicted of Manslaughter Involuntary, a felony, on October 28, 1999. XII R.R. State's Exh. 26. State's Exhibit 26 supported paragraph 2 of the indictment.

Based on a review of all of the evidence in the light most favorable to the verdict and reasonable inferences therefrom, a rational trier of fact could have found all of the essential elements of the assault of a family/household member by impeding breathing or circulation charge brought against Frazier beyond a reasonable doubt. The evidence was sufficient to support the jury's verdict and Frazier's conviction.

## SUMMARY OF ARGUMENT OF ISSUE NUMBER EIGHT

Defense Counsel did not fail to object to fundamental error.

## ARGUMENT OF ISSUE NUMBER EIGHT

A thorough review of the complete Record reflects there was no fundamental error made or existing in the underlying case. Therefore, there was no failure on the part of trial counsel for Frazier to object to fundamental error.

## SUMMARY OF ARGUMENT OF ISSUE NUMBER NINE

Adverse rulings during the punishment phase on objections or motions did not result in reversible error.

## ARGUMENT OF ISSUE NUMBER NINE

The punishment phase of the trial took place July 15, 2014. XI R.R. 1-19. The Record does not reflect any rulings on objections or motions made which were adverse to Frazier. Therefore, based on a thorough review of the Record and applicable legal authorities, no reversible error exists based on adverse rulings made during the punishment phase of trial.

## SUMMARY OF ARGUMENT OF ISSUE NUMBER TEN

The trial court's assessed punishment falls within the applicable range of punishment and does not constitute reversible error.

## ARGUMENT OF ISSUE NUMBER TEN

Texas Penal Code Section 22.01(b)(2)(B) is the statute applicable to the

offense of assault of a family/household member by impeding breathing or circulation. *Texas Penal Code Section 22.01(b)(2)(B).* Based on the facts and circumstances underlying Frazier's charge, Texas Penal Code Section 22.01(b) results in the application of the punishment range for a third degree felony. *Texas Penal Code Section 22.01.*

The indictment includes one enhancement paragraph. I C.R. 13-14. Paragraph two of the indictment references a felony conviction for Manslaughter Involuntary Frazier is alleged to have received on October 28, 1999. I C.R. 13-14.

Texas Penal Code Section 12.42 is the statute that sets forth the punishment range for repeat and habitual felony offenders. *Texas Penal Code Section 12.42.* Section 12.42 (a) provides that "Except as provided by Subsection (c)(2), if it is shown on the trial of a felony of the third degree that the defendant has previously been finally convicted of a felony other than a state jail felony punishable under Section 12.35(a), on conviction the defendant shall be punished for a felony of the second degree." *Texas Penal Code Section 12.42.*

A second degree felony conviction is punishable by a sentence of two to twenty years confinement in the Texas Department of Criminal Justice, and an optional fine of up to $10,000. *Texas Penal Code Section 12.33.*

Frazier entered a plea of "not true" to the enhancement paragraph. VI R.R. 16. At the conclusion of the presentation of punishment evidence, the trial court found Frazier had been previously and finally convicted of the felony offense as charged in paragraph 2 of the indictment. II R.R. 16; I C.R. 34-37. The trial court assessed Frazier's punishment at eighteen (18) years confinement in TDCJ. II R.R. 16; I C.R. 34-37.

The eighteen (18) year sentence assessed by the trial court falls within the punishment range for a second degree felony conviction set forth by the Texas Penal Code. The punishment assessed falls within the applicable statutory punishment range and does not constitute reversible error.

## SUMMARY OF ARGUMENT OF ISSUE NUMBER ELEVEN

The written Judgment is correct and proper jail credit was given.

## ARGUMENT OF ISSUE NUMBER ELEVEN

The written Judgment appears in the Clerk's Record. I C.R. 34-37. The content of the written Judgment accurately reflects the punishment assessed and the sentence pronounced in open court by the trial judge. I C.R. 34-37; XI R.R. 16. The Reporter's transcript reflects the trial judge awarded Frazier jail credit for the time he had been incarcerated in connection with the underlying case. XI

R.R. 18. The content of the written Judgment accurately reflects the jail credit awarded to Frazier. I C.R. 34-37. There is no indication proper credit was not awarded to Frazier.

A clerical error does exist in the written Judgment as to whether the trial court or jury assessed punishment. I C.R. 34. On page one of the "Judgment Of Conviction By Jury," the judgment indicates punishment was assessed by the "Jury." I C.R. 34. Page two of the same document indicates that punishment was assessed by the trial court and that, "Defendant elected to have the Court assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above." I C.R. 35. The Reporter's Record establishes that the trial court assessed punishment after hearing evidence and argument. XI R.R. 5-16. Said clerical error does not constitute reversible error, and can be remedied, if necessary, by a reformation of the written Judgment.

## SUMMARY OF ARGUMENT OF ISSUE NUMBER TWELVE

Frazier's trial counsel rendered effective assistance of counsel.

## ARGUMENT OF ISSUE NUMBER TWELVE

This Court evaluates ineffective assistance of counsel claims based on the

standard of review established by the United States Supreme Court in *Strickland v. Washington* and adopted by the Texas Court of Criminal Appeals. *Strickland v. Washington*, 466 U.S. 668 (1984); *Hernandez v. State*, 988 S.W. 2d 770 (Tex. Crim. App. 1999).

In *Strickland*, the United States Supreme Court established a two part test applied in reviewing ineffective assistance of counsel claims on appeal. *Strickland v. Washington*, 466 U.S. at 687. The two part test known as the *Strickland Standard* provides as follows: "First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

This Court applies the *Strickland Standard* as interpreted by the Texas Court of Criminal Appeals. This Court requires a defendant to first show the performance of the defendant's trial counsel was deficient. After successfully

41

illustrating trial counsel's deficient performance, the defendant must show this deficient performance actually prejudiced the defendant. *Thompson v. State*, 9 S.W. 3d 808, 812 (Tex. Crim. App. 1999); *Strickland v. Washington*, 466 U.S. at 694. The defendant is required to prove by a preponderance of the evidence that his trial counsel rendered ineffective assistance. *Bone v. State*, 77 S.W. 3d 828, 833 (Tex. Crim. App. 2002).

The Texas Court of Criminal Appeals has elaborated on how an appellant demonstrates the performance of his trial counsel was deficient and how an appellant demonstrates he was prejudiced by this trial counsel's deficient performance. The Texas Court of Criminal Appeals has held an appellant demonstrates the performance of his trial counsel was deficient by showing the performance of his trial counsel fell below an objective standard of reasonableness. *Thompson v. State*, 9 S.W. 3d at 812. The Texas Court of Criminal Appeals has held an appellant demonstrates he was prejudiced by his trial counsel's deficient performance by showing there is a reasonable probability that, but for trial counsel's unprofessional errors, the result of the proceeding would have been different. *Mitchell v. State*, 68 S.W. 3d 640, 642 (Tex. Crim. App. 2002); *Thompson v. State*, 9 S.W. 3d at 812. The Texas Court of Criminal Appeals has interpreted "a reasonable probability" as a probability sufficient to undermine confidence in

the outcome. *Thompson v. State*, 9 S.W. 3d at 812 citing *Hernandez v. State*, 726 S.W. 2d 53, 55 (Tex. Crim. App. 1986).

The reviewing court begins its ineffective assistance of counsel evaluation by presuming trial counsel rendered effective assistance. *Mallet v. State*, 65 S.W. 3d 59, 63 (Tex. Crim. App. 2001). To overcome the presumption trial counsel rendered effective assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Mallet v. State*, 65 S.W. 3d at 63 citing *Thompson v. State*, 9 S.W. 3d at 814. The record on appeal is typically undeveloped and fails to illustrate the motive behind trial counsel's actions. *Mallet v. State*, 65 S.W. 3d at 63 citing *Thompson v. State*, 9 S.W. 3d at 813-14.

The trial court appointed Attorney John Sutton to represent Frazier on March 3, 2014. I C.R. 25. The Clerk's Record reflects Attorney Sutton filed several pretrial motions on Frazier's behalf, including a Motion to Qualify experts and to Conduct Gatekeeper Hearings, Motion in Limine, Motion for Exculpatory Evidence, Motion for Witness List, Applications and Motions to Secure Material Out-of-State Witnesses, and a motion to reduce bond. II C.R. 43-55, 59-78. The Reporter's transcript indicates Attorney Sutton actively participated in the voir dire process on Frazier's behalf. V III R.R. 77-120. The Clerk's Record includes

43

documentation of jury strikes exercised Attorney Sutton before a jury was empaneled. I I C.R. 95-96, 91-92.

The Reporter's transcript reflects Attorney Sutton cross examined the State's witnesses, made an opening statement, presented the testimony of Victor Dancer and Frazier, re-called Corey Speck, and made a closing statement on Frazier's behalf during the guilt-innocence phase of trial. IX R.R. 45-57, 63, 93, 100-119, 128-130. X R.R. 10, 41-67, 151-167. The Reporter's transcript reflects Attorney Sutton made a closing statement on Frazier's behalf during the punishment phase of trial. XI R.R. 14-15.

The Record evidence indicates Attorney John Sutton effectively represented Frazier throughout the pendency of the case. The Record evidence does not indicate Attorney Sutton's performance was deficient in any way. Even if Attorney Sutton's performance was somehow deficient, the Record evidence does not indicate Attorney Sutton's deficient performance prejudiced Frazier.

## ANDERS BRIEF

The United States Supreme Court does not obligate counsel representing a client on appeal to argue in support of grounds for reversal of the lower court's judgment when after a "conscientious examination" of the case, appellate counsel

44

determines appeal to be "wholly frivolous." *Anders v. State of California,* 386 U.S. 738, 744 (1967). In such situations, the United States Supreme Court has outlined appropriate procedural steps to be taken by appellate counsel: 1) counsel is required to submit a brief examining the record for any point arguably in support of proper grounds for reversal on appeal; 2) counsel must furnish this brief to an indigent client enabling the client the right to file a pro-se brief based on points of appeal this individual maintains present proper grounds for appeal; and 3) counsel may request the appellate court grant counsel's request to withdraw from the obligation of providing further legal representation to the client on appeal. *Anders v. State of California,* 386 U.S. 738, 744.

Counsel for Nathaniel J. Frazier, Jr.. Jr., Jr. submits the above "Anders Brief" on behalf of Appellant. After a "conscientious examination" of the case, including a diligent review of the Record and applicable authorities, Counsel finds an absence of meritorious grounds for appeal and further submits the basis of any appeal in this case would be frivolous in nature. Therefore Justin S. Mock, Counsel for Appellant, respectfully requests this Court acknowledge and approve her request to withdraw from her court appointed duty of providing further legal representation to Appellant Nathaniel J. Frazier, Jr. on original appeal.

## PRAYER

Justin S. Mock, Counsel for Appellant Nathaniel J. Frazier, Jr. prays this Court acknowledge and approve his request to withdraw from his court appointed duty of providing further legal representation to Appellant Nathaniel J. Frazier, Jr. on original appeal.

Appellant Nathaniel J. Frazier, Jr. prays for additional time to review the Anders Brief submitted on behalf of Appellant and the opportunity to file a pro se Appellant's Brief on Original Appeal on his own behalf.

Respectfully submitted,

Justin S. Mock
Ellis & Mock,PLLC
125 South Irving Street
San Angelo, Texas 76903
Telephone: (325) 486-9800
Facsimile: (325) 482-0565
justin@ellisandmock.com

By: /s/Justin S. Mock
Justin S. Mock
State Bar No.24064155
Attorney for Appellant
Nathaniel J. Frazier, Jr.

## Certificate of Service

I certify a true and correct copy of the above and foregoing Appellant's Original Brief was served in accordance with Rule 9.5 of the Texas Rules of Appellate Procedure on May 7, 2015, on the following parties:

Mr. Jason Ferguson                                          By Personal Delivery
Office of Tom Green County District Attorney
124 West Beauregard Avenue
San Angelo, Texas 76903
Appellee


Mr. Nathaniel J. Frazier, Jr.                               By Certified Mail
TDCJ No. 01942796                                           Return Receipt Requested
John B. Connally Unit
899 FM 632
Kenedy, TX 78119
Appellant


/s/ Justin S. Mock

Justin S. Mock, Attorney for
Nathaniel J. Frazier, Jr.

47

## Certificate of Compliance

I certify the above and foregoing Appellant's Brief contains 10,266 words.

/s/ Justin S. Mock

Justin S. Mock, Attorney for Nathaniel J. Frazier, Jr.

# ELLIS & MOCK PLLC
## Attorneys and Counselors at Law

125 South Irving Street
San Angelo, Texas 76903
Tel (325) 486-9800
Fax (325) 482-0565

May 7, 2015

Mr. Nathaniel J. Frazier, Jr.                    CMRR No.70113500000332791295
TDCJ No. 01942796
John B. Connally Unit
Texas Department of Criminal Justice
899 FM 632
Kenedy, TX 78119                  RE:   *Nathaniel J. Frazier, Jr. vs. The State of Texas;*
                                         Cause No. 03-14-00655-CR; Court of Appeals;
                                         Third Judicial District
                                         (Trial Cause No. D-13-0958-SA)

Dear Mr. Frazier:


Enclosed please find a copy of the motion to withdraw as counsel and brief pursuant to *Anders v. California* that I have prepared and filed in your case. After a diligent search of both the clerk's record and reporter's record in your case and a review of the applicable law, it is my opinion that no reversible error occurred at your sentencing.

Whenever appellate counsel files a motion such as this, the law provides the appellant the right to review the record and file a response identifying to the appellate court any grounds he thinks are non-frivolous issues to be raised on his behalf that the appellate court should consider in deciding whether the case presents any meritorious grounds for appeal. Because I have filed this motion and brief, you now have the right to review the record and file a response or brief if you so choose. To assist you in obtaining the record if you wish to review it, I have enclosed a *Motion for Pro Se Access to the Appellate Record* for you to file. In order to obtain the appellate record, you must sign and date the motion and mail it to the Third Court of Appeals within ten days of the date of this letter at the following address:

> Jeffrey D. Kyle,
> Clerk Third Court of
> Appeals Post Office
> Box 12547 Austin,
> Texas 78711

The Court of Appeals will then direct the clerk of the trial court to provide you with a copy of the appellate record. Your response will be due to be filed in the Third Court of Appeals within 30 days of the date the clerk provides the record to you.

Whether or not you file a response, the law requires the Court of Appeals to review the record to determine if the Court agrees with my assessment that no meritorious grounds for appeal exist, i.e., that no reversible error exists. If the Court does not agree, but instead believes there are non-

49

frivolous issues to be raised on your behalf, the Court must abate the appeal to have another attorney appointed to review the record on your behalf

Should the Court of Appeals ultimately determine that there are no meritorious grounds to be raised and that your appeal is frivolous, the Court will affirm your conviction and sentence. You may then file a pro se petition for discretionary review with the Texas Court of Criminal Appeals. Such petition must be filed within 30 days of the date the Court of Appeals renders its judgment.

Feel free to write me if you have any questions about the procedure utilized in your appeal. I will do my best to answer any questions you may have.

Sincerely,

Justin S. Mock

encl: copy of Brief For Appellant/copy of Motion to Withdraw/Motion for Pro Se Access to Appellate Record